

FILED

JAN 2 7 2006

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

*********************************************************************

| | | |
|---|---|---|
| MARTIN HANSFORD | * | CIV. 04-1017 |
| Plaintiff, | * | |
| -vs- | * | OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT |
| GALE NORTON, SECRETARY, UNITED STATES DEPARTMENT OF INTERIOR, | * | |
| Defendant. | * | |

*********************************************************************

## BACKGROUND

Plaintiff instituted this action against the Secretary of Interior (and indirectly against his employer, the Bureau of Indian Affairs ("BIA")), under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e. Plaintiff alleges that he was denied promotion, demoted in position, and subjected to a hostile work environment based upon his race, Native American, and origin, Quapaw Tribe of Oklahoma. Defendant filed a motion for summary judgment.

## DECISION

The summary judgment standard is well known and has been set forth by this court in numerous opinions. See Hanson v. North Star Mutual Insurance Co., 1999 DSD 34 ¶ 8, 71 F.Supp.2d 1007, 1009-1010 (D.S.D. 1999), Gardner v. Trip County, 1998 DSD 38 ¶ 8, 66 F.Supp.2d 1094, 1098 (D.S.D. 1998), Patterson Farm, Inc. v. City of Britton, 1998 DSD 34 ¶ 7, 22 F.Supp.2d 1085, 1088-89 (D.S.D. 1998), and Smith v. Horton Industries, 1998 DSD 26 ¶ 2, 17 F.Supp.2d 1094, 1095 (D.S.D. 1998). Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." Landon v. Northwest Airlines, Inc., 72 F.3d 620, 634 (8th Cir. 1995). In considering the motion for summary judgment, this Court must view the facts in the light most favorable to plaintiff and give plaintiff the benefit of all reasonable inferences that can be drawn from the facts. Donaho, 74 F.3d at 897-98. This Court has previously pointed out that, in employment discrimination cases under Title VII, summary judgment should seldom be granted. Gardner v. Tripp County, South Dakota, 66 F.Supp.2d 1094, 1098 (D.S.D. 1998) (*citing* Smith v. St. Louis University, 109 F.3d 1261, 1264 (8th Cir. 1997); Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994)). Summary Judgment is rarely appropriate because such "actions are inherently fact based." Mayer v. Nextel West Corp., 318 F.3d 803, 806 (8th Cir. 2003)

Defendant submitted a statement of undisputed material facts as required by D.S.D. LR 56.1(B). Plaintiff did not set forth a "statement of the material facts as to which it is contended that there exists a genuine issue to be tried" and did not respond to each numbered paragraph in defendant's statement of facts as required by D.S.D. LR 56.1(C). Instead, plaintiff submitted the entire transcript of his deposition. This is not sufficient. In addition, all counsel have been instructed, as follows: "If you are filing a motion for summary judgment or opposing one, do not submit entire deposition transcripts. Submit only pages and portions of documents that are relevant with the relevant material highlighted. As one circuit has said: 'Judges are not like pigs, hunting for truffles buried in briefs.'" Standard Operating Procedures, paragraph 13. As required by D.S.D. LR 56.1(D), all material facts set forth by the defendant are deemed to be admitted.

Plaintiff is a Native American male and a member of the Quapaw Tribe of Oklahoma. He was employed as a BIA law enforcement officer in Miami, Oklahoma, from 1992 to 1996. From 1996 to 1999, he was a BIA drug enforcement agent in Artesia, New Mexico. He advanced from pay grade GS 7 to GS 11 during this time. In 1999, he was assigned to a 30 day detail in the BIA

District I Office for Law Enforcement in Aberdeen, South Dakota. At the end of his 30 day detail, he competed for and was selected as the Assistant District Commander in the Aberdeen office at pay grade GS 11. His supervisor was Brent LaRocque ("LaRocque"), a member of the Turtle Mountain Chippewa Tribe of North Dakota, who was District Commander in Aberdeen. LaRocque transferred to Albuquerque, New Mexico, in August 2000.

In January 2001, plaintiff competed for and was selected to replace LaRocque as District Commander in the Aberdeen office at pay grade GS 13. Walt Lamar ("Lamar"), a member of the Blackfeet Tribe of Montana, BIA Assistant Director of Operations (located in Albuquerque, New Mexico) selected plaintiff for the District Commander position and was plaintiff's supervisor. Plaintiff selected Elmer Four Dance ("Four Dance"), a member of the Three Affiliated Tribes of North Dakota, as the Assistant District Commander in the Aberdeen office.

In September 2001, Lamar was reassigned to Washington, D.C. LaRocque once again became plaintiff's supervisor, this time as Assistant Director of Operations. LaRocque's supervisor was Robert Ecoffey ("Ecoffey"), the Director of BIA Law Enforcement Services. Ecoffey is a member of the Oglala Sioux Tribe in South Dakota.

Lamar, prior to his reassignment to Washington, received a written complaint from a BIA Superintendent concerning plaintiff's lack of tact in dealing with tribal leaders. Lamar counseled plaintiff to be cognizant of his demeanor. Thereafter, LaRocque received a letter from a tribal chairman requesting that plaintiff be removed from the District I Commander position based upon his failure to respond to requests for assistance. Ecoffey also began receiving complaints from Agency Superintendents concerning plaintiff's conduct and ineffectiveness. Ecoffey spoke with plaintiff and asked him to make an effort to work with the Tribes and Agency Superintendents. Ecoffey continued to receive complaints about plaintiff from the Tribes as well as from plaintiff's fellow BIA employees concerning plaintiff's ineffectiveness, inability to recruit people to fill positions, and inability to work with the Tribes. During that time period plaintiff was also unable to resolve issues between or among the U.S. Attorney's Office, the Federal Bureau of Investigation, and the BIA Yankton Agency. Plaintiff was also the subject of a formal EEO investigation.

All the foregoing notwithstanding, LaRocque for some reason completed a performance evaluation on October 1, 2001, noting that plaintiff had "achieved" in all critical areas on the evaluation. LaRocque noted that "DC Hansford worked diligently in a large district while under staffed." Plaintiff, along with all other District Commanders, received an award of $2,500.

In October 2001, after the LaRocque performance evaluation, plaintiff requested a promotion to GS 14. On November 7, 2001, LaRocque completed a Trainee Progress Evaluation which was used to evaluate employees for promotion. Ecoffey and LaRocque thereafter met with plaintiff to discuss the evaluation. Plaintiff was informed that he had good law enforcement and writing skills but, based on numerous complaints, he was not effectively communicating with the Tribes and Superintendents and was thus not performing at the level expected of a District Commander. It was noted that plaintiff had several complaints against him for unprofessional conduct and was subject to a pending EEO investigation for discrimination.

Ecoffey asked plaintiff to consider other positions in Albuquerque or Minneapolis at the same pay grade (GS 13). Plaintiff declined, expressing a desire to remain in Aberdeen. Because Ecoffey did not want to lose plaintiff as an employee, he created another Assistant District Commander position in Aberdeen, a position similar to the post in which plaintiff had performed well in the past. Plaintiff agreed to the voluntary reassignment from District Commander to Assistant District Commander. He wrote Ecoffey a letter telling him that, based upon their conversation, he believed "the only options I have are to accept a demotion or face a removal." Effective January 20, 2002, Ecoffey reassigned plaintiff to the position of Supervisory Criminal Investigator, Assistant District Commander in Aberdeen.

On June 2, 2002, Richard Armstrong, a member of the Mojave Colorado River Indian Tribes from Parker, Arizona, was assigned to fill the District Commander position in Aberdeen left vacant by plaintiff's reassignment. Armstrong was plaintiff's supervisor until March 2005. Plaintiff acted as District I Commander intermittently until Four Dance was selected as the District I Commander for Aberdeen on August 7, 2005.[1]

---

[1] Plaintiff initiated his complaint in August, 2004.

4

## I. Discrimination Based upon Tribal Affiliation.

The courts apply the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Johnson v. Ready Mixed Concrete Co., 424 F.3d 806, 810 (8th Cir. 2005). To establish a disparate treatment claim, a plaintiff must show that: (1) he is a member of a protected class; (2) he was meeting the legitimate expectations as to his duties; (3) he suffered an adverse employment action; and (4) circumstances give rise to an inference of discrimination as similarly situated employees, who were not members of the protected group, were treated differently. Jacob-Mua v. Veneman, 289 F.3d 517, 521-22 (8th Cir. 2002). Once the plaintiff employee establishes a *prima facie* case, "the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for" the adverse employment action. Johnson v. Ready Mixed Concrete Co., 424 F.3d at 810. "If the employer can satisfy this burden, the plaintiff must show that the employer's reason is a pretext for intentional discrimination." *Id.*

### A. Protected Class.

Defendant does not dispute that, by virtue of plaintiff's status as a member of the Quapaw Tribe of Oklahoma, plaintiff is in a protected class. Defendant cites Dawavendewa v. Salt River Project Agric. Improvement and Power Dist., 154 F.3d 1117 (9th Cir. 1998), the only published Circuit Court of Appeals decision to have considered the issue. In that case, the Ninth Circuit held that discrimination against one who is a member of the Hopi tribe because he is not a member of the Navajo tribe constitutes national origin discrimination under Title VII. *Id.* at 1119. I do not decide this issue because it is not in dispute in the present action.

### B. Meeting Legitimate Expectations of Employment.

Defendant contends that plaintiff was not meeting the legitimate expectations of a District Commander. The record shows that, during plaintiff's term as District Commander, he did not have good relations with the various tribal law enforcement agencies in District I. Agency Supervisors complained that plaintiff failed to effectively recruit and fill law enforcement positions. Complaints were also made that plaintiff often made remarks to tribal authorities in District I which were disparaging to Indians from tribes in District I. Prior to becoming Director of BIA Law Enforcement Services and supervisor to LaRocque, Ecoffey was a Superintendent of the

5

Pine Ridge Agency in South Dakota. Ecoffey testified that, while in that position, plaintiff, then District Commander, made the comment that he was not getting law enforcement positions filled because all he had was "people from the scum of the earth to select from." Ecoffey also testified that plaintiff complained that "a lot of applicants that we get can't pass the backgrounds, the way these people live and stuff they don't want to work."

Plaintiff has not contested defendant's statement of facts but instead argues that, just weeks before he had requested promotion to a higher pay grade, he had received a favorable review. The exhibits attached to defendant's statement of material facts show that he did in fact receive a favorable employee performance evaluation and a performance award just weeks before he sought a pay increase to GS14 and was instead demoted.

Although it is a very close issue, genuine issues of material fact exist as to whether plaintiff was meeting the legitimate expectations of his employment.

### C. Adverse Employment Action.

The record is clear that, not only did plaintiff not receive a promotion to a GS 14 pay scale, he was demoted from District Commander to Assistant District Commander. While his pay was not affected, his ability to be promoted to pay grade GS 14 was affected. "An employee suffers an adverse employment action when there is a 'tangible change in duties or working conditions' constituting 'a material employment disadvantage.'" Baucom v. Holiday Companies, 428 F.3d 764, 767 (8th Cir. 2005) (*quoting* Burchett v. Target Corp., 340 F.3d 510, 518 (8th Cir.2003)). "The adverse employment action must be one that produces a material employment disadvantage. Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard, as would circumstances amounting to a constructive discharge." Baucom v. Holiday Companies, 428 F.3d at 767 (*quoting* Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1016-17 (8th Cir.1999)). Plaintiff has established that he was subject to an adverse employment action.

### D. Circumstances Give Rise to an Inference of Discrimination.

Defendant submitted portions of the deposition testimony of Ecoffey wherein Ecoffey admitted to making a statement that plaintiff "doesn't fit in up here." Ecoffey denied that the statement was based upon plaintiff's tribal affiliation but instead upon the fact that plaintiff had

6

made disparaging comments about the tribal people in this region being on welfare and being lazy. Plaintiff, Ecoffey contends, does not have an understanding of the harsh conditions "that our people live in up there and unless he was there for awhile, seen it and was able to understand it, it was really hard for him to kind of fit in up there." His "not fitting in," according to Ecoffey, was based upon plaintiff's lack of cultural sensitivity to the plight of the tribes and the people he had to work with on a daily basis.

Plaintiff claims in his deposition that LaRocque made the comment on one occasion that he needed to get "our own people" into key positions with the Aberdeen BIA office. Plaintiff took that comment to mean that people that are members of the tribes located in the upper great plains should be the ones in upper management positions. Plaintiff did not recall that Ecoffey ever said anything which would indicate such a claimed bias. He testified that he had the "feeling" that Ecoffey and LaRocque held that sentiment. He did not, however, "have any reason to believe that the selection decisions of Mr. LaRocque or Mr. Ecoffey have reflected a bias in favor of candidates who are from the Great Plains Regional tribes and against members of tribes who are not from that area."

BIA Law Enforcement District I serves tribes in North Dakota, South Dakota, Nebraska, Minnesota, Iowa, Wisconsin, Illinois, and Michigan. LaRocque and Ecoffey are both from tribes located in District I. However, plaintiff was replaced as District I Commander by a member of the Mojave Colorado River Indian Tribes from Parker, Arizona. He was not replaced by a member of a "northern plains" tribe. Plaintiff has offered no direct evidence that his tribal affiliation was a motivating factor in demotion. *See* Simpson v. Des Moines Water Works, 425 F.3d 538, 543 (8th Cir. 2005). The isolated and objectively benign comments of LaRocque and Ecoffey do not permit an inference that plaintiff's demotion was related to his tribal membership. Plaintiff has failed to demonstrate a *prima facie* case of national origin discrimination.

**E. Defendant's Burden to Articulate Non-Discriminatory Reason.**

Assuming plaintiff has made a *prima facie* showing of disparate treatment, the burden of production would shift to defendant to articulate a legitimate, non-discriminatory reason for demoting plaintiff to Assistant District Commander. Johnson v. Ready Mixed Concrete Co., 424 F.3d at 810. As set forth above, defendant contends that the adverse employment action was taken

against plaintiff because he failed to meet the legitimate expectations of a District Commander. Defendant has articulated a legitimate and nondiscriminatory reason for the defendant's demotion.

### F. Pretext.

Assuming plaintiff has made a *prima facie* showing of disparate treatment, the burden would nonetheless shift back to him "to produce evidence sufficient to create a genuine issue of material fact whether [defendant's] proffered nondiscriminatory reason was a pretext for discrimination." Davis v. KARK-TV, Inc., 421 F.3d 699, 705 (8th Cir. 2005).

Plaintiff has not presented evidence which would allow a reasonable fact-finder to infer that the decision to demote him to Assistant District Commander was based upon his tribal affiliation. *See* Maxfield v. Cintas Corp. No. 2, 427 F.3d 544, 550 (8th Cir. 2005). The United States Supreme Court has held that "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason.'" St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993). Plaintiff has not disputed that he had problems with the Agency Superintendents in District I. He has also not brought forth evidence that discrimination was the real reason he was demoted. He claims he was discriminated against because he was not a member of a great plains tribe. He was not, however, replaced by a member of a great plains tribe. Nor has he brought forth evidence that he was similarly situated to his replacement. There is no evidence that Armstrong had similar difficulties with the Agency Superintendents and was nonetheless promoted or retained.

Plaintiff has failed to produce evidence creating a genuine issue of material fact in support of his claim of discrimination based upon national origin.

### G. Hostile Environment.

Plaintiff claims that he was subject to a hostile work environment because of his membership in the Quapaw Tribe. The conduct plaintiff complains about were remarks that positions of authority within District I should be held by members of northern plains tribes and that he did not fit in.

"The conduct must be sufficient to create a hostile work environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998) (citing Harris, 510 U.S. at

21-22, 114 S. Ct. at 370). The relevant factors for determining whether conduct rises to the level of abusiveness required for a successful hostile work environment sexual harassment claim under Title VII include (a) the frequency of the discriminatory conduct; (b) its severity; (c) whether it is physically threatening or humiliating, or a mere offensive utterance; and (d) whether it unreasonably interferes with an employee's work performance. Harris, 501 U.S. at 23, 114 S. Ct. at 371; Henthorn v. Capitol Communications, Inc., 359 F.3d 1021, 1026 (8th Cir.2004). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. Wright v. Rolette County, 417 F.3d 879, 885 (8th Cir. 2005) (quoting Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1158 (internal citations omitted)). "In order to affect the term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to create an objectively hostile work environment, and in addition, must be subjectively perceived by the plaintiff as abusive." *Id.*

As a matter of law, plaintiff has not set forth facts which objectively rise to the level of abusiveness required to create a *prima facie* case of hostile work environment. There is no genuine issue of material fact and summary judgment should be entered.

## ORDER

Based upon the foregoing,

IT IS ORDERED that defendant's motion (Doc. 19) for summary judgment is granted.

Dated this 27th day of January, 2006.

BY THE COURT:

*Charles B. Kornmann*

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *Barbara J. Jaepke*
DEPUTY
(SEAL)

9